UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [50] AND DENYING MOTION TO VACATE ARBITRATOR'S AWARD [47].

John C. Vernile ("Petitioner" or "Vernile") filed the instant suit seeking to confirm an arbitration award in his favor against Pacifica Foundation, Inc. ("Respondent" or "Pacifica"). Pacifica seeks to vacate the arbitration award.

Before the Court are the parties' cross-motions for summary judgment in connection with Vernile's motion to confirm the arbitration award and Pacifica's motion to vacate the arbitration award. For the forthcoming reasons, Vernile's motion is GRANTED and Pacifica's motion is DENIED.

**I.  Factual and Procedural Background**

Pacifica is a California nonprofit corporation that operates five radio stations in California, Texas, New York, and Washington, D.C., including local Brooklyn radio station WBAI. Dkt. #1, Ex. C ("Final Award") at 1, 3-4. Respondent also manages an archive of its prior broadcasts. *Id.* Pacifica is governed by the Pacifica National Board ("PNB"). *Id.* at 4. The following findings of fact are derived from the parties' arbitration concerning Vernile's employment with Pacifica, which gave rise to the instant suit:

On July 22, 2019, Respondent hired Petitioner to serve as its Interim Executive Director. *Id.* at 3. Prior to Petitioner's employment as the Respondent's Interim Executive Director, Petitioner had "enjoyed a long career in broadcast management." *Id.* at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

To that end, the parties executed an employment agreement ("the Agreement"), which specified that it was to be "governed by, construed, and enforced in accordance with the laws of the state of California." *Id.* at 4. The agreement stated that "The parties hereto further agree that any action brought [to] enforce any right or obligation under this Agreement shall be subject to the exclusive jurisdiction of the courts of the State of California." *Id.*

Petitioner was to serve "an initial term of six months . . . with any renewal . . . at the sole discretion of the PNB." *Id.* Petitioner was to "report to the Pacifica National Board . . . but [would] have the authority of the chief executive of the Foundation." *Id.* Either party could terminate the agreement without cause so long as they provided 90 days' notice, though Pacifica could terminate Vernile for cause without notice. *Id.* "Cause" was defined as the "failure to perform the duties of the Employee in a satisfactory manner, "willful disregard of Pacifica policies and procedures," or "insubordination or deliberate refusal to follow the instructions of the PNB." *Id.*

The Agreement also contained an arbitration provision, which stated in relevant part:

Arbitration: In the unlikely event that of a dispute between Pacifica and the Employee arising out of Employee employment or the termination of employment: Pacifica and Employee agree to submit our dispute to final and binding arbitration with the American Arbitration Association (AAA) or similar provider. Employer and Employee will select a mutually agreeable arbitrator. The arbitration will be held in accordance with AAA's then applicable rules for the resolution of employment disputes, as the exclusive remedy for such controversy, claim or dispute, unless another forum or Arbitrator or Association is agreed to by both parties . . . By agreeing to arbitration, Employee and Pacifica are agreeing that there will be no court or jury trial of disputes between parties concerning Employee's employment or the termination of Employee's employment . . . This agreement to arbitrate is intended to be broad . . . and the claims excluded from final and binding arbitration shall be claims that you may have from worker compensation or unemployment benefits. In addition, Pacifica and Employee agree that Pacifica and Employee shall have the right to seek judicial relief in the form of injunctive and/or other equitable relief under the California Arbitration Act, Code of Civil Procedure section 1281.8.

*Id.* at 3.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

    Petitioner served as Pacifica's Interim Executive Director from July 22, 2019 until November 14, 2019, when the PNB terminated his employment. *Id.* During that time, Petitioner discovered "Pacifica's precarious financial position" resulting from a balloon payment on a loan coming due in April 2021, "improper backup for WBAI's cash expenditures," WBAI's non-compliant payroll system, the failure to comply with limits on gifts and its failure to track gifts, and several "historical reasons" such as costly contracts for the placement of WBAI's radio transmitter. *Id.* at 8-9. Pacifica had also lost $8-14 million in funding from the Corporation for Public Broadcasting due to ongoing compliance problems. *Id.* at 10.

    In addition to these financial problems, Petitioner met with Respondent's Federal Communications Commission ("FCC") lawyers, who "informed [him] of numerous FCC violations, primarily occurring at WBAI" but also at another radio station, KPFT. *Id.* at 10. The lawyers warned Petitioner that he should refrain from informing the PNB because "should the FCC learn about these issues, Pacifica stood a chance of losing its license or of failing to get it renewed." *Id.*

    Petitioner discovered numerous other compliance issues including issues with insurance and donor gifts and learned that WBAI incorrectly told an FBI agent that WBAI did not have tapes the FBI sought in connection with the then-ongoing Mueller investigation. *Id.* at 10-11.

    Petitioner informed the PNB of these issues on September 25, 2019, "describ[ing] the financial crisis Pacifica found itself in, and explored various solutions, including staff reduction." *Id.* at 14. But "the scheduled discussion of these issues never occurred because [PNB directors] cancelled the scheduled September 26, 2019 PNB meeting." *Id.* On September 27, 2019, Petitioner was informed by a payroll employee that WBAI would not be able to meet its next payroll, leading Petitioner to consult with Pacifica's General Counsel. *Id.* at 15. They agreed that a layoff at WBAI was necessary but cautioned Petitioner that the PNB would object by "construing any staff layoff as termination of their employment." *Id.* at 16. Petitioner also met with Pacifica's labor attorney to "ensure that any layoffs would be conducted in accord with the law." *Id.* at 17.

    On October 17, 2019, Petitioner, two PNB members, WBAI's chief engineer, and two security guards entered the WBAI studios to shut down local programming. *Id.* at 18. The Arbitrator found "the evidence . . . conflicting as to whether the action was a layoff or employment termination." The staff interpreted the action as an employment termination. *Id.*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

WBAI's counsel, Arthur Schwartz, sued Pacifica in New York state court to obtain a temporary restraining order enjoining Pacifica from seizing any WBAI property, terminating WBAI employees, preventing WBAI from broadcasting its programming, or interfering in the orderly administration of WBAI affairs. *Id.* at 19. The court granted the restraining order on October 8, 2019. *Id.* But on October 10, 2019, the New York Appellate Division vacated "nearly the entire TRO" except that Pacifica continued to be enjoined from terminating WBAI employees. *Id.* at 20.

A "highly contentious" 3-night telephonic meeting of the PNB ensued from October 10, 2019 to October 12, 2019 to determine whether the PNB would ratify Petitioner's actions. *Id.* at 20. "PNB members aligned with Vernile (principally from other stations) supported the actions." *Id.* at 21. Due to conflicts of interest as a result of some PNB members being named as plaintiffs in the TRO action, and others remaining uncertain as to whether their duty of loyalty to WBAI—not Pacifica--created a conflict of interest, not all members participated in the vote. *Id.* at 20-21. "The members who did vote ratified Vernile's action by a margin of two votes . . . But if the full Board had voted . . . the action of shutting down local control of WBAI and discharging the staff would not have been ratified." *Id.* During that time, Vernile began to receive death threats against him and his family. *Id.*

On October 13, 2019, the PNB convened again, but none of the nine PNB members who ratified Petitioner's actions attended. *Id.* at 21. At the meeting, the present members rescinded the ratification and also suspended Petitioner. *Id.* This meeting, however, violated California laws requiring at least a 48-hour notice for the special meeting of a Board, meaning these votes were illegitimate. *Id.* Vernile thus continued his duties as Interim Executive Director. *Id.*

On Pacifica's behalf, Vernile removed the pending state court case to federal court because FCC regulations were at issue. *Id.* at 23. Vernile also hired an attorney, Foster Garvey, to serve as counsel in the ongoing litigation, though Vernile did not obtain the PNB's consent to do so. *Id.* On October 15, 2019, the Southern District of New York granted Pacifica's motion for a TRO. *Id.*

On November 14, 2019, the PNB voted to terminate Vernile's employment. *Id.* at 25.

On May 4, 2020, Vernile filed an Arbitration Demand and Pacifica counterclaimed on August 7, 2020. *Id.* at 26. In the Demand, Vernile argued that he had been wrongfully terminated in violation of California labor law and public policy and that Pacifica employees defamed him through the WBAI broadcasts in October 2019. *Id.* Pacifica argued that Vernile breached the employment agreement by

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

hiring Garvey without the PNB's consent and "damaged WBAI's fundraising drive when he removed local programming." *Id.* at 27.

The Arbitrator found that Vernile had not been wrongfully terminated, because he had exceeded his authority by terminating WBAI employees and programming without the board's full permission, but awarded him $300,000 in satisfaction of the defamation claim. *Id.* at 28-31. More specifically, the Arbitrator found that the statements made on a WBAI broadcast by Pacifica employees that Vernile was part of a "rogue group" who had staged a "coup" for "millions and millions of dollars to benefit the other stations," among others, to be actionable assertions of fact that the Arbitrator found were "demonstrably false." *Id.* at 34-36. The Arbitrator found that Vernile was a limited public figure who had risen to notoriety after laying off the WBAI staff and shutting down WBAI programming, and that the Pacifica employees made the statements with a reckless disregard for the truth. *Id.* at 37. Because the statements related to Vernile's profession, the Arbitrator found that the statements amounted to slander per se. *Id.* at 38.

As for Pacifica's counterclaims, the Arbitrator found that Vernile did not exceed his authority in engaging Garvey to represent Pacficia because Garvey had been Pacifica's FCC counsel for 30 years. *Id.* at 39-40. As a result, Vernile did not execute a new contract with Garvey in connection with the WBAI litigation. *Id.* Nor did Pacifica provide proof of damages regarding the alleged damage to WBAI's fundraising drive during the days in which WBAI programming had been shut down. *Id.* at 39. Indeed, the Arbitrator found that WBAI's income for October and November 2019 had been similar to its income in October and November 2018, despite the October 7, 2019 layoffs and programming shutdown. *Id.* at 25-26.

Following the arbitration, Vernile filed a Motion to Confirm the $300,000 arbitration award. Dkt. #1. Pacifica moved to vacate the arbitration principally because (1) Petitioner's defamation claim did not arise out of his employment or the termination of his employment; and (2), Arbitrator Welch engaged in prejudicial misconduct. Resp. Mot. at 17-19. The parties each filed subsequent motions for summary judgment on the issue, Dkt. #s 47, 50.

**II.    Jurisdiction**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). That jurisdiction must be strictly construed, with doubts regarding federal

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

jurisdiction resolved against its exercise unless the party invoking federal jurisdiction meets its burden of establishing that it exists. *Id.*; *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).

The parties originally disputed the basis for this Court's federal jurisdiction. Vernile first asserted that the FAA governs the parties' dispute, conferring federal question jurisdiction. However, the Court notes that applicability of the FAA does not alone confer federal question subject matter jurisdiction. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). And in any event, as discussed below, the California Arbitration Act ("CAA"), not the FAA, applies to this dispute.

The Court recognizes that the parties' original employment agreement contained a forum selection clause.[1] Pacifica acknowledges that it has waived its argument that this Court does not have

---

[1] Even if Pacifica had not waived the forum selection clause, relevant authority suggests that the federal courts would have jurisdiction over this dispute. "In order to determine the scope of the forum selection clause, the Court must examine its construction." *Cedars-Sinai Medical Center v. Global Excel Mgmt., Inc.*, No. CV 09-3627 PSG (AJWx), 2010 WL 5572079, at *5 (C.D. Cal. Mar. 9, 2010).

The Court agrees with Pacifica that this a mandatory forum selection clause generally identifying California state courts as the proper forum for disputes between the parties. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009) ("Our interpretation finds support among opinions by our sister circuits who have addressed the meaning of forum selection clauses designating the "courts of" a state—all of whom have interpreted such clauses to refer to the state courts of the designated state, not also to the federal courts in the designated state.").

The forum selection clause nevertheless also states that "any action brought to enforce any right or obligation under this agreement" are subject to the "exclusive jurisdiction of the courts of the State of California." Courts have interpreted the phrase "arising under" to be narrower than the phrase "arising out of." This language identifying claims "arising under" the contract contrasts with the broader language of the arbitration clause, which states that claims "arising out of" Vernile's employment or termination of the employment should be arbitrated. Courts have construed references to claims "arising under" a contract to refer solely to breach of contract and related claims in the context of interpreting forum selection clauses. *See, e.g., Cedars-Sinai*, 2010 WL 5572079, at *5 (noting that "the most limited forum selection clauses cover claims 'arising under' the relevant agreement").

Because of the forum selection clause's narrow construction, the defamation award at issue here did not "arise under" the contract. Instead, it arose from Vernile's termination. More specifically, a legal claim for defamation could exist independently of the rights or obligations under the contract, i.e., the terms of Vernile's employment. And Vernile now seeks to confirm that award, which is a statutory—not contract—action under the CAA.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

jurisdiction because the relevant employment agreement states that any disputes shall be litigated "exclusive[ly] . . . in the courts of the State of California." Nevertheless, the Court must establish that jurisdiction is proper in federal court.

Vernile argues in his Opposition to Pacifica's Motion for Summary Judgment that this Court has federal diversity jurisdiction over the parties. The Court agrees.

Federal diversity jurisdiction requires completely diverse parties, meaning that no plaintiff is from the same state as any defendant, and at least $75,000 in controversy. 28 U.S.C. § 1332; *see also Strawbridge v. Curtiss*, 7 US (3 Cranch) 267 (1806) (requiring complete diversity).

Because Pacifica is a resident of California and Vernile is a resident of New York, the parties are diverse. The amount in controversy also exceeds $75,000, given that the parties dispute whether the $300,000 arbitration award should be confirmed. As a result, this Court has diversity jurisdiction over the parties. *See* 28 U.S.C. § 1332.

### III.     Summary Judgment

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

For the forthcoming reasons, the Court finds that there is no genuine dispute of material fact and that Vernile is entitled to judgment as a matter of law.

**IV.    Legal Standard**

The parties dispute whether their competing motions are governed by the Federal Arbitration Act ("FAA") or the California Arbitration Act ("CAA"). The Court will address this dispute before outlining the governing legal standard.

   **1.    The CAA Governs the Parties' Dispute**

"When an agreement falls within the purview of the FAA, there is a 'strong default presumption . . . that the FAA, not state law, supplies the rules for arbitration.'" *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002)). "To overcome that presumption, parties to an arbitration agreement must evidence a 'clear intent' to incorporate state law rules for arbitration." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (quoting *Sovak*, 280 F.3d at 1269).

A general choice-of-law clause in a contract is insufficient to overcome the presumption that the FAA governs. *Johnson*, 614 F.3d at 1066. Even general references to California law in an arbitration provision are, on their own, insufficient to overcome the presumption. *See Fid. Fed. Bank*, 386 F.3d at 1312 (applying FAA where arbitration clause required "arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association").

Rather, "the parties must explicitly state their intent to incorporate California law *as it relates to arbitration*." *ValueSelling Assocs., LLC v. Temple*, 2011 WL 2532560 at *2 (S.D. Cal. June 23, 2011), *aff'd*, 520 F. App'x 593 (9th Cir. 2013). Thus, "[e]ven if the FAA applies to an agreement, the parties are free to agree to arbitrate under rules different than those established by the FAA. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) (citing *Volt Info. Scis., Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)). To ascertain this intent, "[u]nder United States Supreme Court jurisprudence, [courts] examine the language of the contract to determine whether the

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

parties intended to apply the FAA to the exclusion of California procedural law and, if any ambiguity exists, to determine whether" California law conflicts with the FAA. *Cronus Investments, Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 383 (2005).

Petitioner argues that the agreement is governed by the FAA because "[a]ctions to confirm and/or enforce the result of arbitration proceedings concerning parties and transactions involving interstate commence [sic] are preempted and wholly governed by the FAA. Even when the arbitration contract cites state law, the FAA preempts state arbitration law." Pet. Mot. In Support of Summary Judgment at 4.

Conversely, Respondent argues that the CAA applies because the parties' arbitration clause evidences a clear intent that the California Arbitration Act applies to any dispute between them. Resp. Mot. in Opp. At 8. The Court agrees.

The record may indeed show that the employment relationship constituted interstate commerce, bringing the agreement within the FAA's purview. And the agreement indeed states that California law shall govern the agreement. But the parties' employment agreement is unambiguous in further stating that, immediately following the section stating that the parties agreed to arbitrate disputes arising out of Vernile's employment or termination of employment under AAA rules, the parties also "shall have the right to seek judicial relief in the form of injunctive and/or other equitable relief under the California Arbitration Act," which is distinct from the parties' agreement that the dispute should be considered under California law. *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1067 (9th Cir. 2010) (applying the CAA when it was explicitly stated in the arbitration agreement that the parties' arbitration was to be "conducted and subject to enforcement pursuant to the provisions of California Code of Civil Procedure sections 1280 through 1293" in addition to including a California choice-of-law provision).

Accordingly, the Court finds that the competing motions to vacate and confirm the Arbitrator's final award are governed by the CAA.

**2.  Standard of Review Under the CAA**

Under the California Arbitration Act, an arbitral award *must* be vacated in the following circumstances: (1) the award was procured by corruption, fraud or other undue means; (2) there was corruption in any of the arbitrators; (3) the rights of the party were substantially prejudiced by

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

misconduct of a neutral arbitrator; (4) the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; (5) the rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title; (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. Cal. Civ. Proc. Code section 1286.2(a)(1)-(6).

"[These] enumerated statutory grounds in the CAA are the exclusive grounds for judicial review of arbitration awards." *Johnson*, 614 F.3d at 1069. As California courts have clarified, "consistent with our arbitration statutes and subject to the limited exceptions discussed . . . it is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties . . . Obviously, the 'merits' include all the contested issues of law and fact submitted to the arbitrator for decision." *Monscharsh v. Heily & Blase*, 3 Cal. 4th 1, 28 (1992). Indeed, judicial review of an arbitration award is "generally not reviewable for errors of fact or law, whether or not such error appears on the face of the award or causes substantial injustice to the parties." *Id.* at 10-11.

**V.      Analysis**

Pacifica asserts that the award should be vacated under sections 1286.2(a)(3), (4), and (5), namely, that its rights were substantially prejudiced by the misconduct of the arbitrator, that the arbitrator exceeded her powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; and that Pacifica's rights were substantially prejudiced by the refusal of the arbitrator to postpone the hearing upon sufficient cause being shown or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provision of this title. *See* Pacifica Found.'s Mot. For Summary Judgment, at 16.

More specifically, Pacifica makes the following arguments in favor of granting its motion for summary judgment and vacating the award: (1) The Arbitrator exceeded her powers because Petitioner's defamation claim did not arise out of his employment or the termination of his employment; (2) Arbitrator Welch engaged in prejudicial misconduct by failing to require "a pleading or evidence that comported with fundamental due process;" (3) Arbitrator Welch's finding for Vernile on the defamation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

issue violated California anti-SLAPP law; and (4) that Arbitrator Welch only awarded Vernile $300,000 because she felt sympathetic towards him after finding for Pacifica on the wrongful termination and whistleblower issues and wanted to "award [Vernile] something." *See* Pacifica's Mot. For Summary Judgment at 19, 21, 23.

The Court will address each argument in turn.

1. **Under AAA Rules and Applicable California Law, the Court Cannot Disrupt the Arbitrator's Determination that Vernile's Defamation Claim was Arbitrable**

Pacifica argues that the Arbitrator improperly considered arguments relating to Vernile's defamation claim because some of the allegedly defamatory statements were broadcasted after Vernile's employment had been terminated by the PNB and that the alleged defamation did not "arise from" Vernile's employment or the termination of his employment. Respondent thus apparently argues that this means the claim was not arbitrable per the parties' employment agreement. Pacifica's Mot. For Summary Judgment at 17-19, 25.

Though usually arbitrability is a question for the court, parties may agree to submit matters of substantive arbitrability to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Still, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The evidence here is clear and unmistakable. As Vernile points out, and the parties' arbitration agreement states, the parties agreed to arbitrate under the then-applicable rules of the American Arbitration Association ("AAA"). The relevant rule of AAA Employment Arbitration, Rule 6(a), provides that the arbitrator has the sole authority to construe the meaning of the arbitration contract and the scope of the arbitration proceeding. The Arbitrator apparently found that the defamation claim "arose from" Vernile's employment with Pacifica and that it was properly before the Arbitrator. In addition, the parties' arbitration clause states that it is intended to be construed broadly.

"By incorporating rule 6 of the AAA rules into their agreement, the parties clearly and unmistakably delegated to the arbitrator the authority to determine issues concerning arbitrability." *Rodriguez v. Am. Techs. Inc.*, 136 Cal. App. 4th 1110, 1123 (2006); *Brennan v. Opus Bank* (9th Cir.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

2015) 796 F.3d 1125, 1130 ["Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"]).

Here, as Vernile argues, the Arbitrator evidently viewed the defamation claim within the ambit of the parties' arbitration clause given that defamation was submitted in Vernile's arbitration demand and that the Arbitrator requested that the parties prepare for the defamation issue on several occasions. Vernile's Mot. for Summary Judgment at 13-14. Given this evidence that the Arbitrator clearly viewed the defamation claim as arbitrable combined the parties' incorporation of the AAA rules, Pacifica's argument that the defamation claim was not arbitrable fails.

In the alternative, the Court notes that California courts have found post-termination defamation to be within the scope of parties' arbitration agreements. *See, e.g., Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401, (2004) (finding that an arbitration clause encompassing "the enforcement or interpretation of any provisions of [the employment agreement]" included post-termination torts by the plaintiff's employer such that the plaintiff had to submit for arbitration claims for defamation and emotional distress as well as wrongful termination).

2. **The Arbitrator Did Not Engage in Prejudicial Misconduct During the Arbitration Hearing**

Respondent argues that the award should be vacated because Arbitrator Welch engaged in prejudicial misconduct by permitting certain recordings to be introduced by Vernile and more generally that Pacifica was not permitted ample time and notice to prepare for the defamation claim.

The Court finds the argument that the weight of the evidence cuts against a finding of actionable defamation unpersuasive. Pacifica essentially attempts to relitigate the merits of the arbitration dispute—questions of fact and law that are not judicially reviewable, such as Welch's application of defamation law and her decisions of law regarding arbitrability and the admission and presentation of evidence. *See Monscharsh*, 3 Cal. 4th at 11.

Indeed, California courts have held that an arbitrator's decisions as to the weight of the evidence—even if the prevailing party offers no evidence—are not reviewable. *See, e.g., Bacall v. Shumway*, 61 Cal. App. 5th 950, 961 (2021) ("Despite framing their argument in terms of the arbitrator's

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

powers, Appellants have essentially argued insufficiency of the evidence to support the decision to hold Shumway liable for repayment of the commissions. Even if that were true, it would not provide grounds for vacating the award.").

This case is also distinct from situations in which AAA arbitrators improperly oversaw the admission and presentation of evidence. For instance, courts have vacated awards when the arbitrator declined to allow parties to examine crucial witnesses without giving the parties fair opportunity to develop testimony. *See generally Harvey Aluminum Inc. v. United Steelworkers of America, AFL-CIO*, 263 F. Supp. 488 (C.D. Cal. 1967). Here, conversely, Vernile points to several occasions in which Pacifica should have been made aware of the defamation claims and was given an opportunity to respond. And as Vernile points out, Pacifica had access to the main evidence of defamation: tape recordings from Pacifica's own radio station, in contrast to the situation in *Harvey Aluminum* where the witness's testimony was crucial to determining the issue yet was improperly denied an opportunity to finish testifying. *Id.*; Pet. Mot. for Summary Judgment at 10-13; Decl. of Stephen R. Jaffe (attaching Exhibits A-J).

Because Pacifica had access to the tapes, and because they should have been on notice both from the arbitration demand and from subsequent directives from Arbitrator Welch to address the issue, there is no similar risk of substantial prejudice here. As California courts have noted,

> In the typical arbitration, an arbitrator must make numerous decisions about admission of evidence and in doing so may exclude material evidence. No doubt there will often be aggrieved parties who believe they have been "substantially prejudiced." Decisions about materiality cannot be made without familiarity with the issues and evidence in the arbitration. If the superior court must, with or without a transcript of the arbitration, routinely review the arbitrator's decision on materiality before reaching the question of substantial prejudice, the legislative goal of arbitral finality will be unattainable. Instead of saving time and money, the arbitration will be supplemented by lengthy and costly judicial second-guessing of the arbitrator.

*Hall v. Super. Ct.*, 18 Cal. App. 4th 427, 438 (1993).

Based on Pacifica's opportunities to present evidence on the defamation claim, as well as the fact that the defamation claim was referenced in the arbitration demand, we decline to engage in such

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | *John C. Vernile v. Pacifica Found., Inc.* | | |

"judicial second-guessing" of the award. Thus, the award should not be vacated on this basis.

### 3. California Anti-SLAPP Law Does not Impede Confirmation of the Award

Pacifica seems to argue that the Arbitrator's analysis of defamation of limited public figures, as she found Vernile to be given the contentiousness of his actions while employed by Pacifica, chilled its First Amendment rights and thus the award violates California anti-SLAPP law. Pacifica focuses mainly on the notion that Arbitrator Welch improperly applied the "actual malice" standard in contravention of state and federal First Amendment law. But as repeatedly echoed above and by California courts in the wake of *Monscharch*, this argument is yet another improper attempt at re-litigation of arbitration awards. Defamatory statements are not protected under the First Amendment. *See* Pacifica's Mot. for Summary Judgment at 24-25; Pacifica's Reply in Support of its Motion for Summary Judgment at 22-24.

Whether or not this Court agrees with Arbitrator Welch's finding of actual malice is irrelevant given that, after reviewing the Arbitrator's opinion, the Court cannot conclude that Arbitrator Welch showed a "manifest disregard for the law," violating Pacifica's constitutional rights, by finding that Pacifica employees recklessly disregarded the truth of their statements made on-air. Pacifica's arguments to this effect are therefore no basis for vacating the award.

### 4. Pacifica Does not Adequately Show that Arbitrator Welch was Biased

Nor does Pacifica provide evidence of arbitrator bias, one of the statutory grounds under the CAA mandating vacatur, aside from stating that Welch must have been "sympathetic" to Vernile after finding for Pacifica on the wrongful termination issue. In interpreting this ground of vacatur under the CAA, courts look to whether the submitted evidence would cause a person to "reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." *International Alliance of Theater Stage Employees v. Laughon*, 118 Cal. App. 4th 1380, 1393. The test is both objective and fact-specific. *Id.*

Objectively, the mere fact that the Arbitrator found for Vernile on one claim and not on another would not persuade a reasonable observer that Arbitrator Welch must have been biased. In all adversarial proceedings before a neutral party, there is an inherent likelihood of prevailing on one claim but not another. Such a situation is distinct from the statutorily-defined instances of arbitrator conflict

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02599-SVW-PVC | Date | September 13, 2022 |
|---|---|---|---|
| Title | John C. Vernile v. Pacifica Found., Inc. | | |

such as failing to disclose, for example, service in pending arbitrations involving the same attorneys or proving that the arbitrator was somehow corrupt. *See, e.g., Honeycutt v. JP Morgan Chase Bank*, 25 Cal. App. 5th 909, 931 (2018).

Thus, Pacifica's assertion that Arbitrator Welch's so-called "sympathy" for Vernile made the award somehow improper is meritless.

**VI.    Conclusion and Order**

None of the statutory grounds requiring vacatur of an arbitration award are met here. Accordingly, Pacifica's argument that the award should be vacated pursuant to the California Arbitration Act fails.  Because there is no genuine dispute of material fact between the parties and Vernile is entitled to judgment as a matter of law, the Court grants summary judgment in his favor.

For the foregoing reasons, Respondents' motion to for summary judgment requesting the Final Award be vacated is DENIED.  Petitioner's motion for summary judgment to confirm the Final Award is GRANTED.  The Final Award is hereby confirmed.

IT IS SO ORDERED.

| | : |
|---|---|
| Initials of Preparer | PMC |